DAVID C. SHONKA
Acting General Counsel

JS-6

MICHAEL J. DAVIS (*pro hac vice*)
mdavis@ftc.gov
SHIRA D. MODELL (*pro hac vice*)
smodell@ftc.gov
DEAN C. GRAYBILL (*pro hac vice*)
dgraybill@ftc.gov
SYDNEY M. KNIGHT (*pro hac vice*)
sknight@ftc.gov
Federal Trade Commission
600 Pennsylvania Avenue, NW, Rm. CC-10528
Washington, DC 20580
(202) 326-2458, -3116, -3082, -2162 (voice)
(202) 326-3259 (fax)

JOHN D. JACOBS (Local Counsel) (CA 134154)
jjacobs@ftc.gov
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4343 (voice)
(310) 824-4380 (fax)

ATTORNEYS FOR PLAINTIFF

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **FEDERAL TRADE COMMISSION**,<br>                         Plaintiff,<br>          v.<br><br>**LUNADA BIOMEDICAL, INC.**, a<br>corporation;<br>**DONNA KASSEINOVA**, individually and<br>as an officer of Lunada Biomedical, Inc.;<br>**ROMAN TRUNIN**, individually and as an<br>officer of Lunada Biomedical, Inc.; and<br>**EMIL ARUTYUNOV**, a/k/a **EMIL<br>CHIABERI**, individually and as an officer<br>of Lunada Biomedical, Inc.,<br>                         Defendants. | Case No. 2:15cv-03380-MWF-PLA<br><br>**STIPULATED ORDER FOR<br>PERMANENT INJUNCTION<br>AND MONETARY JUDGMENT<br>AGAINST ALL DEFENDANTS** |

1

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Amended Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") for a permanent injunction and other equitable relief in this matter, pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b). The Commission and Defendants Lunada Biomedical, Inc., Donna Kasseinova, Roman Trunin, and Emil Arutyunov, a/k/a Emil Chiaberi, hereby stipulate to the entry of a Stipulated Order for Permanent Injunction and Monetary Judgment Against All Defendants ("Order") with the following terms and provisions:

## FINDINGS

By stipulation of the parties and being advised of the premises, the Court finds:

1.      This Court has jurisdiction over this matter.

2.      The Complaint charges that Defendants participated in deceptive acts or practices in violation of Sections 5 and 12 of the FTC Act, 15 U.S.C. §§ 45 and 52, in connection with the labeling, advertising, marketing, distribution, and sale of Amberen, a dietary supplement that purportedly causes menopausal and perimenopausal women to lose weight and belly fat, and also purportedly relieves menopausal symptoms including hot flashes, night sweats, difficulty sleeping, fatigue, and irritability.

3.      Defendants neither admit nor deny any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendants admit the facts necessary to establish jurisdiction.

4.      Defendants waive any claim that they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agree to bear their own costs and attorney fees.

5.      Defendants and the Commission waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

1.      "Corporate Defendant" means Lunada Biomedical, Inc. ("Lunada") and its successors and assigns.

2.      "Individual Defendants" means Roman Trunin, Donna Kasseinova, and Emil Arutyunov, a/k/a Emil Chiaberi.

3.      "Defendants" means all of the Individual Defendants and the Corporate Defendant, individually, collectively, or in any combination.

4.      "Advertisement" or "advertising" or "ad" mean any written or verbal statement, illustration, or depiction that promotes the sale of a good or service or is designed to increase consumer interest in a brand, good, or service.  Advertising media include, but are not limited to, packaging and labeling; promotional materials; print; television; radio; and internet, social media, and other digital content.

5.      "Clear(ly) and conspicuous(ly)" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.      In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication even if the representation requiring the disclosure is made in only one means;

b.      A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying

3

text or other visual elements so that it is easily noticed, read, and understood;

      c.    An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it;

      d.    In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable;

      e.    The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears;

      f.    The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications;

      g.    The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication; and

      h.    When the representation or sales practice targets a specific audience, such as children, the elderly, or the terminally ill, "ordinary consumers" includes reasonable members of that group.

6.    "Close Proximity" means on the same print page, webpage, or other electronic page, and proximate to the triggering representation, and not accessed or displayed through hyperlinks, pop-ups, interstitials, or other means.

7.    "Covered Product" means any dietary supplement, food, or drug, including, but not limited to, Amberen.

8.    "Dietary supplement" means:

      a.    Any product labeled as a dietary supplement or otherwise represented as a dietary supplement; or

      b.    Any pill, tablet, capsule, powder, softgel, gelcap, liquid, or other similar form containing one or more ingredients that is a vitamin, mineral,

4

herb or other botanical, amino acid, probiotic, or other dietary substance for use by humans to supplement the diet by increasing the total dietary intake, or a concentrate, metabolite, constituent, extract, or combination of any ingredient described above, that is intended to be ingested, and is not represented to be used as a conventional food or as a sole item of a meal or the diet.

9.     "Endorsement" means as defined in 16 C.F.R. § 255.0(b).

10.    "Essentially Equivalent Product" means a product that contains the identical ingredients, except for inactive ingredients (*e.g.*, binders, colors, fillers, excipients), in the same form and dosage, and with the same route of administration (*e.g.*, orally, sublingually), as the Covered Product; *provided that* the Covered Product may contain additional ingredients if reliable scientific evidence generally accepted by experts in the relevant field indicates that the amount and combination of additional ingredients is unlikely to impede or inhibit the effectiveness of the ingredients in the Essentially Equivalent Product.

11.    "Food" and "drug" mean as defined in Section 15 of the FTC Act, 15 U.S.C. § 55.

12.    "Material connection" means any relationship that materially affects the weight or credibility of any endorsement and that would not reasonably be expected by consumers.

13.    "Person" means a natural person, an organization, or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

14.    "Reliably Reported," for a human clinical test or study ("test"), means a report of the test has been published in a peer-reviewed journal, and such published report provides sufficient information about the test for experts in the relevant field to assess the reliability of the results.

**ORDER**

**PROHIBITED REPRESENTATIONS:  WEIGHT-LOSS AND
MENOPAUSE-RELATED CLAIMS**

**I.     IT IS ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation that such product:

      A.     Causes weight loss;

      B.     Causes sustained weight loss;

      C.     Causes loss of belly fat;

      D.     Boosts metabolism;

      E.     Relieves hot flashes, night sweats, irritability, mood swings, inability to concentrate, sleeplessness, lack of energy, decreased libido, stress, anxiety, weight gain, headache, or muscle or joint aches associated with menopause; or

      F.     Cures, mitigates, or treats, any disease;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that substantiates that the representation is true.  For purposes of this Section, competent and reliable scientific evidence shall consist of human clinical testing of the Covered Product or of an Essentially Equivalent Product that is sufficient in quality and quantity, based on standards generally accepted by experts

in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate that the representation is true.  Such testing shall (1) be randomized, double-blind, and placebo-controlled; and (2) be conducted by researchers qualified by training and experience to conduct such testing.  In addition, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as described in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.  Defendants shall have the burden of proving that a product satisfies the definition of an Essentially Equivalent Product.

**PROHIBITED REPRESENTATIONS:**
**OTHER HEALTH-RELATED CLAIMS**

**II.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from making, or assisting others in making, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, other than representations covered under Section I of this Order, about the health benefits, performance, or efficacy of any Covered Product, unless the representation is non-misleading, and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence that is sufficient in quality and quantity based on standards generally accepted by experts in the relevant disease, condition, or function to which the representation relates, when considered in light of the entire body of

7

relevant and reliable scientific evidence, to substantiate that the representation is true.

For purposes of this Section, competent and reliable scientific evidence means tests, analyses, research, or studies (1) that have been conducted and evaluated in an objective manner by such experts; (2) that are generally accepted by such experts to yield accurate and reliable results; and (3) that are randomized, double-blind, and placebo-controlled human clinical testing of the Covered Product, or of an Essentially Equivalent Product, when such experts would generally require such human clinical testing to substantiate that the representation is true.  In addition, when such tests or studies are human clinical tests or studies, all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of such testing as set forth in the Section entitled Preservation of Records Relating to Competent and Reliable Human Clinical Tests or Studies must be available for inspection and production to the Commission.

**PROHIBITED REPRESENTATIONS REGARDING TESTS OR STUDIES**

**III.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are permanently restrained and enjoined from misrepresenting, or assisting others in misrepresenting, in any manner, expressly or by implication, including through the use of any product name, endorsement, depiction, or illustration:

    A.    The existence, contents, validity, results, conclusions, or interpretations of any test, study, or research; or

    B.    That the benefits of such product are scientifically proven.

8

**FDA APPROVED CLAIMS**

**IV.    IT IS FURTHER ORDERED** that nothing in this Order shall prohibit Defendants from:

  A. Making any representation for any drug that is permitted in labeling for such drug under any tentative or final monograph promulgated by the Food and Drug Administration, or under any new drug application approved by the Food and Drug Administration; and

  B. Making any representation for any product that is specifically permitted in labeling for such product by regulations promulgated by the Food and Drug Administration pursuant to the Nutrition Labeling and Education Act of 1990 or permitted under Sections 303-304 of the Food and Drug Administration Modernization Act of 1997.

**PROHIBITED MISREPRESENTATIONS OF OTHER MATERIAL FACTS**

**V.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product are permanently restrained and enjoined from misrepresenting, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration:

  A. Any material fact concerning such product, including, but not limited to, its success rate or customer satisfaction with the product; or

  B. Any material terms and conditions of any offer, including, but not limited to, the details, conditions, and limitations of any "risk free" offer.

9

### DISCLOSURE OF MATERIAL CONNECTIONS

**VI.    IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, employees, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, shall not make any representation, in any manner, expressly or by implication, including through the use of a product name, endorsement, depiction, or illustration, about any user or consumer endorser of such product unless they disclose, clearly and conspicuously, and in close proximity to the representation, a material connection, when one exists, between such user or endorser and Defendants or any other individual or entity manufacturing, advertising, labeling, promoting, offering for sale, selling, or distributing such product.

### MONETARY JUDGMENT AND PARTIAL SUSPENSION

**VII.   IT IS FURTHER ORDERED** that:

A.    Judgment in the amount of Forty Million Dollars ($40,000,000) is entered in favor of the Commission against Lunada Biomedical, Inc., Donna Kasseinova, Roman Trunin, and Emil Arutyunov, a/k/a Emil Chiaberi, jointly and severally, as equitable monetary relief.

B.    Defendants are ordered to pay to the Commission Two Hundred Fifty Thousand Dollars ($250,000), which, as Defendants stipulate, their undersigned counsel holds in escrow for no purpose other than payment to the Commission. Such payment must be made within 21 days of entry of this Order by electronic fund transfer in accordance with instructions previously provided by a representative of the Commission.  Upon such payment, the remainder of the judgment is suspended, subject to the Subsections below.

C.     The Commission's agreement to the suspension of part of the judgment is expressly premised upon the truthfulness, accuracy, and completeness of Defendants' sworn financial statements and related documents (collectively, "financial attestations") submitted to the Commission, namely:

1.     The Financial Statement of Individual Defendant Donna Kasseinova signed on November 23, 2015;

2.     The Financial Statement of Individual Defendant Roman Trunin signed on November 23, 2015;

3.     The Financial Statement of Individual Defendant Emil Arutyunov, signed on  November 23, 2015; and

4.     The Financial Statement of Corporate Defendant Lunada Biomedical, Inc., signed by Roman Trunin, Chief Executive Officer, on December 9, 2015, including the following attachments thereto:

a.     Lunada Biomedical 2014 U.S. Income Tax Return for an S Corporation, with attached schedules;

b.     Lunada Biomedical Balance Sheet (as of Dec. 31, 2014);

c.     Lunada Biomedical Balance Sheet (as of Nov. 30, 2015);

d.     Lunada Biomedical Statement of Profit and Loss (Jan. – Dec. 2014);

e.     Lunada Biomedical Statement of Profit and Loss (Jan. – Nov. 2015);

f.     Lunada Biomedical Statement of Cash Flows (Jan. – Dec. 2014);

g.     Lunada Biomedical Statement of Cash Flows (Jan. – Nov. 2015); and

h.     Lunada Biomedical Bank of America Combined Statement (Nov. 1, 2015 – Nov. 30, 2015).

D.     The suspension of the judgment will be lifted as to any Defendant if, upon motion by the Commission, the Court finds that Defendant failed to disclose any material asset, materially misstated the value of any asset, or made any other material misstatement or omission in the financial attestations identified above.

E.     If the suspension of the judgment is lifted, the judgment becomes immediately due as to that Defendant in the amount specified in Subsection A above (which the parties stipulate only for purposes of this Section represents the consumer injury alleged in the Complaint), less any payment previously made pursuant to this Section, plus interest computed from the date of entry of this Order.

F.     Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order and may not seek the return of any assets.

G.     The facts alleged in the Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

H.     The facts alleged in the Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

I.     Defendants acknowledge that their Taxpayer Identification Numbers (Social Security Numbers or Employer Identification Numbers), which Defendants previously submitted to the Commission, may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

J.     All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement.  Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## PRESERVATION OF RECORDS RELATING TO COMPETENT AND RELIABLE HUMAN CLINICAL TESTS OR STUDIES

**VIII.  IT IS FURTHER ORDERED** that, with regard to any human clinical test or study ("test") upon which Defendants rely to substantiate any claim covered by this Order, Defendants shall secure and preserve all underlying or supporting data and documents generally accepted by experts in the field as relevant to an assessment of the test, including, but not necessarily limited to:

A.     All protocols and protocol amendments, reports, articles, write-ups, or other accounts of the results of the test, and drafts of such documents reviewed by the test sponsor or any other person not employed by the research entity;

B.     All documents referring or relating to recruitment; randomization; instructions, including oral instructions, to participants; and participant compliance;

C.     Documents sufficient to identify all test participants, including any participants who did not complete the test, and all communications with any participants relating to the test; all raw data collected from participants enrolled in

13

the test, including any participants who did not complete the test; source documents for such data; any data dictionaries; and any case report forms;

D.     All documents referring or relating to any statistical analysis of any test data, including, but not limited to, any pretest analysis, intent-to-treat analysis, or between-group analysis performed on any test data; and

E.     All documents referring or relating to the sponsorship of the test, including all contracts and communications between any sponsor and the test's researchers.

*Provided, however*, the preceding preservation requirement shall not apply to a Reliably Reported test, unless the test was conducted, controlled, or sponsored, in whole or in part (1) by any Defendant, or any person or entity affiliated with or acting on behalf of any Defendant, including officers, agents, representatives, and employees, or any other person or entity in active concert or participation with any Defendant ("Defendant's affiliates"), (2) by the supplier or manufacturer of the product at issue, or (3) by a supplier to any Defendant, to Defendant's affiliates, or to the product's manufacturer of any ingredient contained in such product.

For any test conducted, controlled, or sponsored, in whole or in part, by Defendants, Defendants must establish and maintain reasonable procedures to protect the confidentiality, security, and integrity of any personal information collected from or about participants.  These procedures shall be documented in writing and shall contain administrative, technical, and physical safeguards appropriate to Defendants' size and complexity, the nature and scope of Defendants' activities, and the sensitivity of the personal information collected from or about the participants.

## CUSTOMER INFORMATION

**IX.   IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and all other persons in active concert or participation

14

with any of them, who receive actual notice of this Order, are permanently restrained and enjoined from directly or indirectly failing to provide sufficient customer information to enable the Commission to efficiently administer consumer redress.  If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

## ORDER ACKNOWLEDGMENTS

**X.     IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order:

A.     Each Defendant, within 30 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.     For 5 years after entry of this Order, the Individual Defendants for any business that such Defendant, individually or collectively with any other Defendants, is the majority owner or controls directly or indirectly, and the Corporate Defendant, must deliver a copy of this Order to:  (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 21 days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.     From each individual or entity to which a Defendant delivered a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

//

//

**COMPLIANCE REPORTING**

**XI.   IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission:

A.   One hundred twenty days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury:

1.   Each Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant; (b) identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant (which Individual Defendants must describe if they know or should know due to their own involvement); (d) describe in detail whether and how that Defendant is in compliance with each Section of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

2.   Additionally, each Individual Defendant must:  (a) identify all telephone numbers and all physical, postal, email and Internet addresses, including all residences; (b) identify all business activities, including any business for which such Defendant performs services whether as an employee or otherwise and any entity in which such Defendant has any ownership interest; and (c) describe in detail such Defendant's involvement in each such business, including title, role, responsibilities, participation, authority, control, and any ownership.

B.   For 10 years after entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 30 days of any change in the following:

1.     Each Defendant must report any change in:  (a) any designated point of contact; or (b) the structure of the Corporate Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including:  creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

2.     Additionally, each Individual Defendant must report any change in: (a) name, including aliases or fictional name, or residence address of such Defendant, or (b) title or role in each such business in which Defendant has direct or indirect control, and identify the name, physical address, and any Internet address or the business or entity.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, NW, Washington, DC  20580.  The subject line must begin:  *FTC v. Lunada Biomedical, Inc., et al.*, FTC No. X150036.

**RECORDKEEPING**

**XII.   IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Corporate Defendant in connection with the marketing and sale of any dietary supplement, food, or drug, and each Individual Defendant in connection with the marketing and sale of any dietary supplement, food, or drug for any business that such Defendant, individually or collectively with any other Defendant, is a majority owner or controls directly or indirectly, must create and retain the following records:

      A.   Accounting records showing the revenues from all goods or services sold;

      B.   Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's:  name; addresses; telephone numbers; job title or position; dates of service; and (if applicable) the reason for termination;

      C.   Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

      D.   All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

      E.   A copy of each unique advertisement or other marketing material.

**COMPLIANCE MONITORING**

**XIII.  IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order:

      A.   Within 30 days of receipt of a written request from a representative of the Commission, each Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The

Commission is also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69, provided that Defendants, after attempting to resolve a dispute without court action and for good cause shown, may file a motion with this Court seeking an order for one or more of the protections set forth in Rule 26(c).

B.     For matters concerning this Order, the Commission is authorized to communicate directly with each Defendant.  Defendant must permit representatives of the Commission to interview any employee or other person affiliated with any Defendant who has agreed to such an interview.  The person interviewed may have counsel present.

C.     The Commission may use all other lawful means, including posing, through its representatives as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

**RETENTION OF JURISDICTION**

**XIV.  IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**So ordered this 25th day of May, 2016.**

_____
Michael W. Fitzgerald
UNITED STATES DISTRICT JUDGE

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**


_____        Dated: _____
MICHAEL J. DAVIS
SHIRA D. MODELL
DEAN C. GRAYBILL
SYDNEY M. KNIGHT
Federal Trade Commission
600 Pennsylvania Avenue, NW
Mailstop CC-10528
Washington, D.C. 20580
Tel.:  202-326-2458, -3116, -3082, -2162
Fax:  202-326-3259
mdavis@ftc.gov, smodell@ftc.gov, dgraybill@ftc.gov, sknight@ftc.gov

JOHN D. JACOBS (CA 134154)
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, CA 90024
(310) 824-4360 (voice)
(310) 824-4380 (fax)
jjacobs@ftc.gov
Attorneys for Plaintiff
FEDERAL TRADE COMMISSION


**FOR DEFENDANTS:**
LUNADA BIOMEDICAL, INC.
6733 S. Sepulveda Blvd.
Los Angeles, CA 90045


By: _____        Dated: _____
Roman Trunin, Chief Executive Officer

1

2

3   _____   Dated: _____

4   DONNA KASSEINOVA, individually and
    as a former officer of LUNADA BIOMEDICAL, INC.

5   6733 S. Sepulveda Blvd.,
    Los Angeles, CA 90045

6

7

8   _____   Dated: _____

9   ROMAN TRUNIN, individually and
    as an officer of LUNADA BIOMEDICAL, INC.

10  6733 S. Sepulveda Blvd.
    Los Angeles, CA 90045

11

12

13  _____   Dated: _____

14  EMIL ARUTYUNOV, a/k/a EMIL CHIABERI,
    individually and as a former officer of

15  LUNADA BIOMEDICAL, INC.

16  6733 S. Sepulveda Blvd.
    Los Angeles, CA 90045

17

18

19  _____   Dated: _____

20  Jonathan W. Emord
    Peter A. Arhangelsky

21  Eric J. Awerbuch
    Joshua S. Furman

22  Emord & Associates, P.C.

23  3210 S. Gilbert Road, Suite 4
    Chandler, AZ 85286

24  Phone: (602) 388-8899

25  Fax: (602) 393-4361

26  jemord@emord.com, parhangelsky@emord.com, eawerbuch@emord.com,
    jfurman@emord.com

27  ATTORNEYS FOR ALL DEFENDANTS

28
                                    21